1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION**

10
11

| | |
|---|---|
| JAVIER ENRIQUE PEREZ, | ) Case No. SA CV 14-1768-R (AS) |
| | ) |
| Petitioner, | ) **FINAL REPORT AND RECOMMENDATION OF** |
| | ) |
| | ) **UNITED STATES MAGISTRATE JUDGE** |
| v. | ) |
| | ) |
| NEIL McDOWELL, Warden,[1] | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

18
19     This Final Report and Recommendation is submitted to the Honorable

20 Manuel L. Real, United States District Judge, pursuant to 28 U.S.C. §

21 636 and General Order 05-07 of the United States District Court for the

22 Central District of California.

23

24                    **I.   INTRODUCTION**

25

26 _____

27     [1]     As noted by Petitioner (see Objections to the Report and
Recommendation at 1-2), the original Report and Recommendation did not
28 contain the correct name of Respondent.   The Final Report and
Recommendation remedies that issue.

                                    1

On November 5, 2014, Javier Enrique Perez ("Petitioner"), a California state prisoner represented by counsel, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254, accompanied by a supporting Memorandum of Points and Authorities ("Petition Memorandum"). (Docket Entry Nos. 1, 4).[2] On March 23, 2015, Respondent filed an Answer to the Petition. (Docket Entry No. 11). Petitioner filed a Traverse on April 17, 2015. (Docket Entry No. 14).

The Court issued a Report and Recommendation on July 27, 2015. (Docket Entry No. 17). Petitioner filed Objections to the Report and Recommendation on August 4, 2015. (Docket Entry No. 18).

This Final Report and Report and Recommendation now issues. For the reasons stated below, it is recommended that the Petition be DENIED and that this action be DISMISSED with prejudice.

## II.  PROCEDURAL HISTORY

On May 17, 2011, an Orange County Superior Court jury found Petitioner guilty of one count of sexual penetration with a foreign object by force in violation of California Penal Code ("P.C.") § 289(a)(1) (Count 1), one count of aggravated sexual assault of a child in violation of P.C. § 269(a)(5) (Count 2), and two counts of forcible lewd act on a child under 14 years old in violation of P.C. § 288(b)(1)

---

[2]     Petitioner subsequently filed and later withdrew a Motion to Stay the Petition under Rhines v. Weber, 544 U.S. 269 (2005). (Docket Entry Nos. 6-7).

(Counts 3 and 4), and found true the following special allegations: Petitioner was a minor (16 years or older) when he committed the offenses in Counts 1 through 4 (California Welfare & Institutions Code § 707(d)(1)); with respect to Counts 3 and 4, Petitioner committed a lewd act upon a child against more than one victim (P.C. § 667.61(b)/(e)); with respect to Counts 3 and 4, Petitioner committed a lewd act upon multiple children (P.C. § 1203.066(a)(7)); and with respect to Counts 3 and 4, Petitioner committed substantial sexual conduct with a child, i.e., sexual penetration (P.C. § 1203.066(a)(8)). (See 1 Clerk's Transcript ["CT"] 46-49; 2 CT 297-310). On September 23, 2011, the trial court sentenced Petitioner to state prison for a total of 30 years to life, consisting of consecutive terms of 15 years to life on Counts 3 and 4 under California's "One Strike" law,[3] and stayed terms of 8 years on Count 1, and 15 years to life on Count 2. (See 1 CT 51-53; 2 CT 359-62; 3 RT 531-37).

Petitioner appealed his convictions and sentence to the California Court of Appeal, which, on February 5, 2013, affirmed the Judgment. (See Lodgment Nos. 3, 5, 7, 8). Petitioner filed a Petition for Review with the California Supreme Court, which was summarily denied on June

---

[3]     P.C. § 667.61(b) provides that any person convicted of certain enumerated offenses under certain enumerated circumstances "shall be punished by imprisonment in the state prison for 15 years to life."

One of the enumerated offenses is lewd or lascivious act, in violation of P.C. § 288(b).  See P.C. § 667.61(c)(4).

One of the enumerated circumstances is the defendant's commission of one of the enumerated offenses against more than one victim.  See P.C. § 667.61(e)(4).

A trial court is required to impose a consecutive sentence for each conviction under P.C. 288(b) if the crimes involve separate victims. See P.C. § 667.61(i).

1    19, 2013.  (See Lodgment Nos. 11-12).

2

3        Petitioner filed a petition for writ of certiorari with the United

4    States Supreme Court, which was summarily denied on November 14, 2013.

5    (See Lodgment Nos. 13-14).

6

7        On March 5, 2014, Petitioner filed a habeas petition with the

8    Orange County Superior Court, which was denied on May 1, 2014.  (See

9    Lodgment Nos. 15-16).  Petitioner then filed a habeas petition with the

10   California Supreme Court, which was summarily denied on December 17,

11   2014.  (See Lodgment Nos. 17, 20, 21).

12

13                       III.   FACTUAL BACKGROUND

14

15       Petitioner is not challenging the sufficiency of the evidence to

16   support his convictions.  The following summary is taken from the

17   "Facts" section of the California Court of Appeal's Opinion (see

18   Lodgment No. 8 at 3; People v. Perez, 214 Cal.App.4th 49, 53 (2013)):

19

20            Mario's mother worked as a janitor in Santa Ana, and

21       sometime before 5 p.m. on July 16, 2008, dropped him off at the

22       house of his friend, Andy.  Andy's brother Oscar, age 22, was

23       supposed to be baby-sitting the two boys, and [Petitioner] was

24       Oscar's friend.

25

26            [Petitioner's] molestations of the two boys occurred in

27       the dining area of the kitchen, and can be quickly summarized:

28

                                    4

(1) [Petitioner] pulled down Mario's pants, and held him on the table so he could not get away. [Petitioner] soon told Andy to "get a plastic bag and some pink cream," and then [Petitioner] put Andy's hands in the bag," then he himself put lotion on the bag, then he "told [Andy] to put his hands in [Mario's butt]." Andy complied. Mario screamed. [Petitioner] laughed. Mario tried to get away but [Petitioner] held him.

(2) [Petitioner] next told Andy "to get the light saber," which had been a present given Andy on his birthday. The light saber had a broken edge at the very end. Mario described the toy as "a star wars stick that was broken from the tip." As Andy would later characterize [Petitioner's] words, "he made me" because Andy felt "scared of him." [Petitioner] put the light saber "inside [Mario's] butt."

(3) [Petitioner] then pulled Andy's pants down, and grabbed Andy with both hands, lifted him up while Mario was still bent over the table, and made Andy "rub [his] dick up against" Mario's "butt."

Moments later, [Petitioner] used a loud, raised voice to tell Andy not to tell his mother "what he did to me." Andy later told Mario, "I'm sorry ... I had to do it."

## IV.  PETITIONER'S CLAIMS

Petitioner raises the following claims for federal habeas relief:

1

2  Ground One:     Petitioner's sentence under California's One Strike Law
3                  violates the Eighth Amendment. (Petition at 5, Petition
4                  Memorandum at 9-13; Traverse at 2-3).

5

6  Ground Two:     P.C. § 3051(h) denies equal protection under the
7                  Fourteenth Amendment by arbitrarily denying youth
8                  offender parole hearings. (Petition at 5, Petition
9                  Memorandum at 13-23; Traverse at 3-5).

10

11  Ground Three:  P.C. § 3051(b) denies equal protection under the
12                 Fourteenth Amendment by arbitrarily delaying youth
13                 offender parole hearings. (Petition at 6, Petition
14                 Memorandum at 13-17, 23-27; Traverse at 8-9).

15

16                       **V.   STANDARD OF REVIEW**

17

18      Under the Antiterrorism and Effective Death Penalty Act of 1996
19  ("AEDPA"), a federal court may not grant habeas relief on a claim
20  adjudicated on its merits in state court unless that adjudication
21  "resulted in a decision that was contrary to, or involved an
22  unreasonable application of, clearly established Federal law, as
23  determined by the Supreme Court of the United States," or "resulted in
24  a decision that was based on an unreasonable determination of the facts
25  in light of the evidence presented in the State court proceeding."  28
26  U.S.C. § 2254(d).

27

28      The term "clearly established Federal law" means "the governing

                                    6

legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003); see also Cullen v. Pinholster, 131 S.Ct. 1388, 1399 (2011); Williams v. Taylor, 529 U.S. 362, 412 (2000)("clearly established Federal law" consists of holdings, not dicta, of Supreme Court decisions "as of the time of the relevant state-court decision"). However, federal circuit law may still be persuasive authority in identifying "clearly established" Supreme Court law or in deciding when a state court unreasonably applied Supreme Court law. See Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011); Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000).

A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam); Williams, supra, 529 U.S. at 405-06; see also Cullen v. Pinholster, supra ("To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court."). When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." Williams, supra, 529 U.S. at 406. However, the state court need not cite the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early, supra.

7

A state court decision involves an "unreasonable application" of clearly established federal law "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, supra, 529 U.S. at 407; Cullen v. Pinholster, supra; Woodford v. Visciotti, 537 U.S. 19, 24-27 (2002) (per curiam); Moore v. Helling, 763 F.3d 1011, 1016 (9th Cir. 2014)(stating that courts may extend Supreme Court rulings to new sets of facts on habeas review "only if it is 'beyond doubt' that the ruling apply to the new situation or set of facts."), cert. denied, 135 S.Ct. 2361 (2015).  A federal habeas court may not overrule a state court decision based on the federal court's independent determination that the state court's application of governing law was incorrect, erroneous or even "clear error." Lockyer, supra, 538 U.S. at 75; Harrington v. Richter, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").  Rather, a decision may be rejected only if the state court's application of Supreme Court law was "objectively unreasonable." Lockyer, supra; Woodford, supra; Williams, supra, 529 U.S. at 409; see also Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004)("objectively unreasonable" standard also applies to state court factual determinations).

When a state court decision is found to be contrary to or an unreasonable application of clearly established Supreme Court law, a federal habeas court "must then resolve the [constitutional] claim without the deference AEDPA otherwise requires." Panetti v. Quarterman,

8

551 U.S. 930, 953 (2007); <u>see also</u> <u>Williams</u>, <u>supra</u>, 529 U.S. at 406 (when a state court decision is contrary to controlling Supreme Court law, a federal habeas court is "unconstrained by § 2254(d)(1)").   In other words, if a § 2254(d)(1) error occurs, the constitutional claim raised must be considered *de novo*.   <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1012-15 (9th Cir. 2008); <u>see also</u> <u>Rompilla v. Beard</u>, 545 U.S. 374, 390 (2005).

## VI.   DISCUSSION

## A.   <u>California's One Strike law</u>

Petitioner contends that the trial court's imposition of mandatory consecutive life sentences pursuant to P.C. § 667.61 (California's One Strike law) violated the Eighth Amendment under <u>Miller v. Alabama</u>, 132 S.Ct. 2455 (2012) because the statute "robs sentencing judges of discretion to consider juvenile age and mitigating factors." Petitioner, quoting <u>Miller</u>, <u>supra</u>, 132 S.Ct. at 2467, claims that in any sentencing scheme that provides for mandatory life sentences for juveniles, "sentencing courts must 'tak[e] account of an offender's age and the wealth of [mitigating] characteristics and circumstances attendant to it.'"[4] As support for his claim, Petitioner notes the trial

---

[4]   Petitioner alleges as "facts" statements contained in the Orange County Probation Department, Probation and Sentencing Report (filed on July 18, 2011) that were taken from a psychological evaluation of Petitioner used for a pre-plea report:

[Petitioner's] childhood was marked by poverty, neglect and abuse.   His mother reluctantly admitted to physically and emotionally abusing him.   She had numerous

(continued...)

court's statement that, if it had the discretion to consider Petitioner's age, it would have sentenced Petitioner to something less than two consecutive terms of 15-years to life on the convictions for forcible lewd act on a child under 14 years old.[5]  (Petition at 5, Petition Memorandum at 9-13; Traverse at 2-3).[6]

---

[4] (...continued)
boyfriends, and often left [him] with friends, or alone, while she worked. [Petitioner] was rarely supervised, and saw his mother's boyfriends and husbands abuse alcohol and abuse his mother. He shared a room with his mother and her boyfriends, and was in the room when she had intercourse with them. [¶] Notably, [Petitioner] suffered sexual child abuse. He was raped (i.e., the victim of anal intercourse). As a result of the poverty, physical abuse, neglect, and being a child-molestation victim, [Petitioner] suffered from anxiety, long-standing depression, and low-average intellectual functioning. (Petition Memorandum at 3-4, citing to 2 CT 333-34, 344-45, footnotes omitted).

[5]     In response to Petitioner's argument at the sentencing hearing that consecutive 15-year to life terms constituted cruel and unusual punishment (see 3 RT 353-55), the trial court stated:

[Petitioner's counsel], if I may just speak candidly. I'm not quarreling with your position. Quite frankly, if the court had more discretion in this case it would appear to me, based upon the defendant's age – and not to minimize the incidents that were involved, but probably a 15-year-to-life sentence would be more appropriate; however, the question before the court is whether the court can make a federal constitutional finding that the will of the people as expressed through the legislation with respect to child molestation victims, whether it comes within the rubric of being a cruel and unusual punishment for constitutional purposes. I'm not prepared to make that finding. [¶] I do appreciate what you are saying. This court has sent a number of people to prison for first degree murder for less than this sentence, and I think that's the point you were trying to make and I'm mindful of it. But I just can't say that for federal and state constitutional purposes that the sentence amounts to something that would fit the paradigm in which you are suggesting. (3 RT 355).

[6]     Although Petitioner raised the claim that his sentence was
(continued...)

1    **1.   Legal Authority**

2

3        In Roper v. Simmons, 543 U.S. 551 (2005), the United States Supreme

4    Court held that the imposition of the death penalty for juveniles under

5    the age of 16 for whatever crime violated the Eighth and Fourteenth

6    Amendments.  Id. at 569, 571, 578.  In Graham v. Florida, 560 U.S. 48

7    (2010), the United States Supreme Court held that a sentence of life

8    without the possibility of parole for a juvenile who did not commit a

9    homicide constituted cruel and unusual punishment under the Eighth

10   Amendment.  Id. at 74, 82.  In Miller v. Alabama, supra, the United

11   States Supreme Court held that a mandatory sentence of life without the

12   possibility of parole for juveniles under the age of 18 violated the

13   Eighth Amendment's prohibition on cruel and unusual punishment.  Miller,

14   132 S.Ct. at 2460, 2469, 2475.  The Supreme Court expressed concern

15   about such a harsh mandatory sentence for juveniles:  "Such mandatory

16   penalties, by their nature, preclude a sentencer from taking account of

17   an offender's age and the wealth of characteristics attendant to it."

18   Id. at 2467; see also id. at 2468 ("Mandatory life without parole for a

19   juvenile precludes consideration of his chronological age and its

20   hallmark features--among them, immaturity, impetuosity, and failure to

21   appreciate risks and consequences.  It prevents taking into account the

22   family and home environment that surrounds him--and from which he cannot

23   usually extricate himself--no matter how brutal or dysfunctional.  It

24   neglects the circumstances of the homicide offense, including the extent

25

26       [6] (...continued)

27   grossly disproportionate to the offenses and therefore constituted cruel
     and unusual punishment on direct appeal to the California Court of
28   Appeal, (see Lodgment No. 3 at 42-53, No. 7 at 16-17), he does not
     allege that claim here.

of his participation in the conduct and the way familial and peer pressures may have affected him.") .

### 2.   The California Court of Appeal's Opinion

The California Court of Appeal rejected Petitioner's claim that the mandatory consecutive sentence imposed pursuant to California's One Strike law violated the Eighth Amendment's prohibition against cruel and unusual punishment because the trial court did not have discretion to consider Petitioner's age and mitigating circumstances, stating:

> Under Welfare and Institutions Code section 602, subdivision (b)(2)(G), the prosecutor had no discretion other than to try 16-year-old [Petitioner] in adult criminal court. And, under California's one-strike law, the trial judge had no discretion other than to impose the two 15-year-to-life sentences concurrently.[7] (See § 667.61, subdivisions (b) [specifying 15-year-to-life penalty] and (i) [requiring consecutive sentences if separate victims].) However, as noted by [Petitioner], the trial judge was personally reluctant to impose the two penalties consecutively, and "probably" would have run the penalties concurrently if he'd the authority to do so.

---

[7]   The Court assumes that the word, "concurrently," was a typographical error since the trial court clearly imposed two "consecutive" 15-year to life sentences. (See 1 CT 51-53; 2 CT 359-62; 3 RT 531-37).

Now, on appeal, beyond the simple application of the *Roper-Graham-Miller-Caballero*[8] line, [Petitioner] argues that the rationale behind that line of cases — basically the diminished culpability of minors resulting from their immaturity — implies that California's one-strike law is unconstitutional as applied to minors because it deprives trial courts of the discretion to take into account what the Miller and Roper majorities described as the "what 'any parent knows' " factor. (*Miller*, *supra*, 132 S.Ct. at p. 2464, quoting *Roper v. Simmons*, *supra*, 543 U.S. at p. 569, 125 S.Ct. 1183.)

The argument is unpersuasive because it overstates the scope of the *Roper-Graham-Miller-Caballero* line.  The central focus in the majority opinions in the three federal high court cases was the fact the offenders had been exposed to the "harshest" available sentence.  As *Miller* summarized *Roper* and *Graham*: "By removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's *harshest term of imprisonment* proportionately punishes a juvenile offender.  That contravenes *Graham's* (and also *Roper's*) foundational principle:  that imposition of a State's *most severe* penalties on juvenile

---

8    In People v. Caballero, 55 Cal.4th 262 (2012), the California Supreme Court reversed a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses, holding, in accordance with Graham v. Florida, supra, that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment."  Id. at 269.

offenders cannot proceed as though they were not children."
(*Miller*, *supra*, 132 S.Ct. at p. 2465, italics added; see *Roper*,
*supra*, 543 U.S. at p. 568, 125 S.Ct. 1183 ["Because the death
penalty is the most severe punishment, the Eighth Amendment
applies to it with special force."].)

But this is not an LWOP case. The state's most severe
penalties are not at stake here. So, essentially,
[Petitioner's] argument boils down to proposing a
judicially-imposed rule of mandatory discretion, namely that no
matter how heinous the crime — *or how mild the penalty otherwise
imposed on adults* — the federal and state cruel and unusual
punishment clauses require states to hold out some possibility
of discretionary reduction in that penalty to take into account
an offender's youth. Under the logic of [Petitioner's]
position, California's one-strike law is unconstitutional as
applied to him even if he were given two mandatory consecutive
five-year terms and would be out of prison when he turned 26 —
*if* those were the terms similarly situated adults would receive.

This seems to us a question properly addressed to the
legislature and we need only note that, at the moment at least,
no high court has articulated a rule that all minors who commit
adult crimes and who would otherwise be sentenced as adults must
have the opportunity for some discretionary reduction in their
sentence by the trial court to account for their youth.
[Petitioner's] sentence, albeit long, still leaves plenty of
time for him to be eligible for parole. It passes

constitutional muster. (Lodgment No. 8 at 8-10; <u>People v. Perez</u>,

<u>supra</u>, 214 Cal.App.4th at 58-59, italics in original, footnotes

omitted, bracketed footnote added).[9]


### 3.  Analysis


The Court is not aware of any United States Supreme Court case

holding that a mandatory consecutive sentence for a juvenile eligible

for parole violates the Eighth Amendment.[10]   Based on the absence of

United States Supreme Court authority squarely addressing this issue,

the Court finds that the California courts' rejection of Petitioner's

claim neither was contrary to, nor involved an unreasonable application

of, clearly established federal law, as determined by the United States

Supreme Court.   <u>See</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008)

("Because our cases give no clear answer to the question presented,

. . . it cannot be said that the state court unreasonably applied

clearly established Federal law."); <u>Yarbough v. Alvarado</u>, 541 U.S. 652,

666 (2004) ("[I]f a habeas court must extend a rationale before it can

apply to the facts at hand then the rationale cannot be clearly

established at the time of the state-court decision."); <u>Stenson v.

Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007) ("Where the Supreme Court has

not addressed an issue in its holding, a state court adjudication of the

---

[9]    Under <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991), it may be
presumed that the California Supreme Court, by its silent denial of
Petitioner's Petition for Review and/or Petitioner's habeas petition
raising the same claims, did not intend to change the California Court
of Appeal's reasoned decision rejecting them.   <u>Id.</u> at 803-04.

[10]    According to the California Court of Appeal, Petitioner will
be eligible for parole when he is 47 years old. (<u>See</u> Lodgment No. 8 at
8).

1   issue not addressed by the Supreme Court cannot be contrary to, or an
2   unreasonable application of, clearly established federal law.").

3

4       Accordingly, the California Supreme Court's rejection of
5   Petitioner's claim directed to the constitutionality of California's One
6   Strike law was neither contrary to, nor involved an unreasonable
7   application of, clearly established federal law.

8

9   **B.   P.C. § 3051(h)**

10

11      Petitioner contends that P.C. § 3051, effective January 1, 2014 and
12  enacted in response to <u>Graham</u> and <u>Miller</u>, denies equal protection under
13  the Fourteenth Amendment by arbitrarily denying youth offender parole
14  hearings to juveniles like Petitioner who are sentenced under
15  California's One Strike law. Petitioner claims that although he (and
16  other juveniles sentenced under California's One Strike law) are
17  similarly situated to other juveniles (i.e., those convicted as adults
18  for crimes committed when they were juveniles), P.C. § 3051(h) excludes
19  him (and other juveniles sentenced under California One Strike law) from
20  obtaining youth offender parole hearings to demonstrate their maturity
21  and rehabilitation, but grants such hearings to other equally or more
22  culpable and dangerous juvenile offenders (i.e., murderers). Petitioner
23  claims that the different treatment is not rationally related to a
24  legitimate state interest. (Petition at 5, Petition Memorandum at 13-
25  23; Traverse at 3-5).

26

27      P.C. § 3051 provides in pertinent part:

28

(a)(1)  A youth offender parole hearing is a hearing by the Board of Parole Hearings for the purpose of reviewing the parole suitability of any prisoner who was under 18 years of age at the time of his or her controlling offense.

* * * * *

(b)(1)  A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a determinate sentence shall be eligible for release on parole at a youth offender parole hearing by the board during his or her 15th year of incarceration, unless previously released pursuant to other statutory provisions.

(2)  A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a life term of less than 25 years to life shall be eligible for release on parole by the board during his or her 20th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.

(3)  A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.

* * * * *

(h)  This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (I), inclusive, of Section 667, or Section 667.61, or in which an individual was sentenced to life in prison without the possibility of parole.  This section shall not apply to an individual to whom this section would otherwise apply, but who, subsequent to attaining 18 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike."  See City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); see also Plyler v. Doe, 457 U.S. 202, 216

(1982) ("'The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'"); Frayley v. Bureau of Prisons, 1 F.3d 924, 926 (9th Cir. 1993).

To establish an equal protection violation, Petitioner must show "that the statute, either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999); see also McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991).

"[I]f it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the two groups is justified." McLean, 173 F.3d at 1185 (citation omitted). Unless a legislative classification targets a suspect class or burdens a fundamental right, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest. Vacco v. Quill, 521 U.S. 793, 799 (1997).

Since Petitioner is not claiming that P.C. § 3051(h) targets a suspect class or burdens a fundamental right, rational relationship review is appropriate. Under rational relationship review, a law is constitutional "so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1996); see Armour v. City of Indianapolis, 132 S.Ct. 2073, 2080 (2012) ("'[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection clause if

18

there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'")(citations omitted); <u>Heller v. Doe by Doe</u>, 509 U.S. 312, 319 (1993) ("[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'")(citations omitted).

The Orange County Superior Court rejected Petitioner's claim, stating:

> Petitioner does not meet his burden of demonstrating that he is similarly situated for equal protection purposes to juvenile offenders convicted and sentenced for other serious crimes but who are nevertheless statutorily eligible for youth offender parole hearing under § 3051. Petitioner stands convicted of violent sex crimes perpetrated on multiple children and was sentenced pursuant to Penal Code § 667.61. "Section 667.61 was enacted to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction." Heightened sentences are intended when "the nature or method of the sex offense placed the victim in a position of elevated vulnerability." (*People v. Luna* (2012) 209 Cal.App.4th 460, 471; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 186.) A rational basis therefore supports the statutory distinction found in Penal Code § 3051(h). In enacting the One Strike law, the Legislature sought to ensure that offenders convicted of qualifying sex offenses under specific circumstances receive and serve lengthier prison

sentences upon their first conviction. Excluding juvenile offenders sentences under the One Strike law from § 3051's provisions is consistent with and furthers the legislative intent behind the enactment of the One Strike law. (Lodgment No. 16 at 4-5).

The Superior Court properly found that: (1) Petitioner is not similarly situated to other juvenile offenders who did not commit serious sex crimes perpetrated on multiple children; (2) the denial of youth offender parole hearings for juveniles like Petitioner who were sentenced under California's One Strike law bore a rational relation to a legitimate end; and (3) excluding certain sexual offenders from youth offender parole hearings furthered the goal of P.C. § 667.61 to ensure that certain sexual offenders receive long prison sentences. See People v. Wutzke, 28 Cal.4th 923, 929-30 (2002) ("According to a general statement of purpose in the legislative history, the targeted group preys on women and children, cannot be cured of its aberrant impulses, and must be separated from society to prevent reoffense."); People v. Alvarado, 87 Cal.App.4th 178, 200-01 (2001) (The one strike law "reflects the Legislature's zero tolerance toward the commission of sexual offenses against particularly vulnerable victims."); People v. Palmore, 79 Cal.App.4th 1290, 1296 (2000) ("The one strike law was enacted to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction.").

Thus, the California Supreme Court's denial of Petitioner's claim directed to the constitutionality of P.C. § 3051(h) was neither contrary to, nor involved an unreasonable application of, clearly established

1  federal law.

2

3  **C.    P.C. § 3051(b)**

4

5      Petitioner contends that P.C. § 3051(b) denies equal protection
6  under the Fourteenth Amendment by arbitrarily delaying youth offender
7  parole hearings for similarly situated juvenile offenders. Petitioner
8  claims that § 3051(b) "creates three juvenile-offender classes" based on
9  the length of the juveniles' sentences," specifically, 15 years for a
10 determinate sentence, 20 years for a life term of less than 25 years to
11 life, and 25 years for a life term of 25 years to life. Petitioner
12 further claims that the different treatment for each of the three
13 classifications is not related to a legitimate state interest. (Petition
14 at 6, Petition Memorandum at 13-17, 23-27; Traverse at 8-9).

15

16     The Orange County Superior Court (see Lodgment No. 16 at 6), found
17 Petitioner's claim to be moot since there is no live case or controversy.
18 The Court agrees. Petitioner cannot be impacted by whether the three
19 classifications established by P.C. § 3051(b) constitute an equal
20 protection violation since Petitioner is not entitled to a youth offender
21 parole hearing under P.C. § 3051(h). See Spencer v. Kemna, 523 U.S. 1,
22 7 (1998) (there is no longer a case or controversy if a petitioner does
23 not have a "personal stake in the outcome" or if a petitioner has not
24 suffered or is threatened with an actual injury "likely to be redressed
25 by a favorable judicial decision"); Kittel v. Thomas, 620 F.3d 949, 951
26 ("The Constitution limits the jurisdiction of the federal courts to live
27 cases and controversies, and as such, federal court may not issue
28 advisory opinions.").

## VII.   RECOMMENDATION

For the reasons discussed above, it is recommended that the district court issue an Order: (1) approving and accepting this Final Report and Recommendation; (2) directing that Judgment be entered dismissing the action with prejudice.


DATED: August 5, 2015.


_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE